THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CLAXTON HARMON WILLIAMS III, Defendant-Appellant.

Fourth District   No. 4—86—0520

Opinion filed December 31, 1987.—Rehearing denied January 26, 1988.

100

Frederick F. Cohn, of Chicago, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

After a jury trial, defendant was convicted of murder, aggravated battery, armed violence, and unlawful use of a firearm by a felon. Defendant was sentenced to 40 years' imprisonment for the offense of murder, 30 years for the offense of armed violence, consecutive, and five years for the offense of unlawful use of a firearm by a felon, consecutive, for a total sentence of 75 years. In this direct appeal from the foregoing convictions and sentences, defendant raises 14 separate alleged errors. On September 16, 1985, defendant was charged by information with four counts of murder, one count of aggravated battery, one count of armed violence, and one count of unlawful use of a firearm by a felon. On January 6, 1986, a jury trial commenced to hear evidence regarding these charges. As the parties are well aware of the facts of this case, and the issue of reasonable doubt has not been raised, only a fairly brief summary of the extensive testimony which was presented in the case is initially set forth, and additional facts are related as necessary in the analysis of the individual issues presented for review.

Robert Givens testified on behalf of the State. He stated that during the late evening hours of September 14 and the early morning hours of September 15, 1985, he was in the area of the Modest Tavern. His cousin, the murder victim, Clayton Woods, called him to the outside, near the tavern. The witness saw the defendant, whom he had known for 10 years, exit a car and go across the street. The witness testified that the victim was approximately 5 feet tall, and weighed 135 pounds, and that the defendant was 6 feet tall, and weighed 180 pounds. He testified that he saw the defendant with something in his hand, and that he hit Mary Duckworth, the victim of the aggravated battery, across the face, saying, "I told you I was go-

ing to get you." Givens testified that he thought the defendant had a gun because something shiny was in his hand, and later he saw the defendant point a derringer at him. He identified the gun used by the defendant. Givens further testified that after Duckworth fell down, Woods approached the defendant, but after seeing the gun, Woods stepped behind Givens to shield himself from the defendant. Givens, who had his arm in a cast, stood there while Woods locked his arms around Givens' waist. Givens testified that the defendant cocked the gun, came over the top of Givens, and struck Woods with the gun, knocking him to the ground. According to Givens, Woods had nothing in his hands and made no aggressive movements toward the defendant. Givens testified that the defendant kicked the victim, who was curled up, between five and seven times. The defendant stopped and appeared to be leaving when he saw a knife. According to Givens, he then stated, "Well, look what I've got here," and stabbed Woods three to four times. Givens stated that the victim did not possess anything to defend himself with during the stabbing. Givens also testified that the final time the defendant stabbed the victim, the defendant went to pull out the knife, but the knife remained inside the victim's body, so the defendant went back with his hand to pull it out. The defendant ran to the car, and Givens tried to get the victim into the tavern. Givens stated that while the victim struggled to get inside, the defendant returned, either striking or stabbing the victim again, knocking him into the doorway. He kicked Woods again and then left. The witness testified that he did not see Mary Duckworth with a weapon, nor did he see her make any aggressive movements toward the defendant. The witness heard the victim Woods ask the defendant why he was doing this, to which the defendant responded that he should not mess with his niece.

James Grayson, another witness to the stabbing, testified that he initially saw the defendant sitting in a car across the street from Modest Tavern. The defendant exited, walked toward Mary Duckworth, and struck her in the face. She questioned him as to why he was doing this, but the defendant did not respond. The witness continually watched the incident and never saw an object in Duckworth's hand. The victim Woods then came over, and the defendant pointed a gun at him. The victim Woods shielded himself behind Robert Givens, and the defendant told Givens to move. Givens responded, "I'm not holding him, he's holding me." Grayson testified that the defendant hit the victim in the head with the gun, and he fell to the street. He was then kicked and stomped by the defendant while he attempted to cover up. As the victim tried to get up, a straight-blade knife fell from his cloth-

ing. With the gun in one hand, the defendant stabbed the victim three to four times in the chest with that knife. Grayson testified that the victim then got up, took three steps, and fell. Grayson then left the area. He testified that he never saw the victim or Mary Duckworth provoke the defendant. He also identified the gun used by the defendant.

Four other eyewitnesses, including Mary Duckworth, the victim of the aggravated battery for which defendant was convicted, presented testimony which substantially corroborated the testimony of Givens and Grayson.

Claxton Harmon Williams, Jr., the defendant, age 37, testified in his own behalf. He stated that on September 14, 1985, he was riding in a car with Noah Rife and Celena Young. Defendant stated that Rife had been having problems with his girlfriend and wanted to talk. They drove into the country, but had no weapons. They stopped at a package liquor store and purchased one quart of beer and a soda. The beer was later emptied out at the request of police officers after defendant and Rife were stopped while urinating on a roadway. After a vehicle search, they were permitted to leave. The defendant testified that he did not drink because he was not feeling well. He denied looking for Clay Woods or Mary Duckworth. While driving from the country to the Modest Tavern, the defendant claimed that he slept in the car.

Defendant testified that while they were parked in front of the tavern, an individual approached the car and indicated that Woods and Duckworth were at the Modest Tavern. Defendant testified that this individual, whom he refused to identify, gave defendant a handgun. Defendant testified that he did not want the gun and placed it on the floor of the car. He exited the vehicle and went across the street to speak with Duckworth and Woods. Defendant testified that he approached Duckworth and asked her about an incident involving his cousin. Defendant testified that she denied any knowledge of this incident, became belligerent, and refused to speak with him about the incident. The defendant stated that he saw her hand in her purse, and claimed that he saw a knife inside. He further testified that she reached for it, and he screamed, "Don't pull any knife on me," so he struck her with his fist. Defendant then stated that Clay Woods was right there, and he was pulling for a knife, which he always carried, so the defendant jumped on him. The defendant claimed that he had no weapons at that time. According to defendant's testimony, he and Woods were fighting for the knife, and they went to the ground. The defendant remembered having control of the knife but did not recall

stabbing the victim. As others approached, the defendant believed that they were going to jump him, so he ran to the car to get a gun. The victim ran into the Modest Tavern. The defendant stated that he knew the victim had a knife and was capable of using it. He further stated that he ran after the victim and remembered swinging at him and cutting him. He claimed that he then left the tavern and suddenly saw Mary Duckworth in the doorway. Thinking she had a knife, he cut her in the face, and then drove to the Fair Oaks housing project. The defendant admitted speaking to Kelly on September 8 about the incident wherein Kelly was injured and looking for Mary Duckworth on that date, but he was unable to find her. The defendant testified that Duckworth and the victim had a reputation for using knives. The defendant denied making a statement at the public safety building that "he had to do it to get even because they cut [his] niece, Lisa." His cousin Kelly was not known as Lisa. The defendant did not recall describing to the police the manner in which Kelly was cut. The defendant testified to being present during two incidents where he witnessed Clay Woods stab others without reason.

On cross-examination, the defendant testified that he was 5 feet 10½ inches tall, and that he weighed 165 pounds. He stated that he "imagined" that he stabbed the victim, agreeing that he did not see any other person stab, kick, or hit the victim that evening. The defendant denied exiting his car and walking away while the police attempted to stop him. He admitted talking to Kelly after the incident wherein Kelly was allegedly cut by Duckworth, but he testified that he looked for those responsible only on the evening that Woods was killed. Defendant admitted that the incident wherein Kelly had been cut had upset him and he did not like it. Defendant testified that he knew both the victim and Mary Duckworth carried knives and had reputations for using them. When the defendant exited the vehicle near the tavern, he knew that Clay Woods was there. Defendant stated that he knew their reputations for violence, yet he claimed that he did not initially bring the gun with him.

Defendant testified that during his conversation with Duckworth, he did not have his arms crossed. He stated that he verbally told her not to bother Kelly. The defendant stated that he saw her reach into her purse and saw a knife. He could not identify its blade, color, type, size, or type of handle, nor could the defendant testify as to how she was holding her purse. He stated that he told her not to pull the knife. At this time, defendant testified that Woods was in the vicinity, and he had a butcher's knife which was half removed from his clothing. The defendant claimed that he jumped on Woods to prevent him

from attacking him. He stated that he grabbed the arm area of the victim and claimed that he neither kicked nor stomped him. The defendant did not recall the victim's hiding behind Robert Givens. Defendant testified that during the struggle between the two, the knife fell out, and the defendant gained possession. The defendant did not know how many times the victim was stabbed. After previously stating that he did not strike the victim with his fist, defendant admitted that he did strike the victim. The defendant reiterated the sequence of events, indicating that he followed the victim into the tavern and cut his face, then ran back to the car to get the unloaded gun, because he feared for his personal safety. He stated that he had the knife in his left hand and the gun in his right. Defendant testified that Woods went into the tavern and that he paid no attention to the whereabouts of Mary Duckworth until he cut her on his way out of the tavern. The defendant testified that he dropped the knife on the way to the car. He stated that he had a nick on his right arm, yet photographs taken of him after the incident did not reflect any such injury. The defendant testified that statements testified to have been made by him to officers at the public safety building were concoctions. The defendant did not remember stabbing the victim Woods in the heart or the victim's begging for his life.

At the conclusion of the testimony, an instructional conference was conducted, closing arguments were made, and the jury was instructed. Subsequently, the jury returned verdicts of guilty on all counts.

A presentence report was prepared, a sentencing hearing was conducted, and defendant was sentenced to 40 years' imprisonment for the murder conviction, 30 years' imprisonment for the armed violence conviction, and five years' imprisonment for the unlawful use of a firearm by a felon conviction. The trial court ordered that these sentences be served consecutively, for a total sentence of 75 years' imprisonment in the Department of Corrections. Defendant was also sentenced to six months' imprisonment for wilful and contumacious conduct at the sentencing hearing, and this sentence was ordered to be served concurrently with the other sentences. This is a direct appeal from the convictions and sentences in this case.

A large number of the issues raised by defendant on appeal relate to alleged errors in the jury instructions. We initially note that only one of these numerous issues was presented to the trial court and properly preserved for appeal. This issue is whether the court erred by refusing to instruct the jury that the State had to disprove that defendant was acting under sudden and intense passion resulting

from serious provocation in order to convict defendant of felony murder. The underlying felony in the felony murder count was aggravated battery. This is an affirmative defense that would have reduced the offense of murder to manslaughter pursuant to section 9—2(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)). This instruction was given with regard to the charges of murder contained in counts I through III; however, this instruction was refused with regard to the charge of felony murder contained in count IV.

Section 9—2(a) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)) provides, in pertinent part:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."

Defense counsel argued at length that an instruction pursuant to section 9—2(a) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)) should have been given with regard to the felony murder count as well as the other murder counts. The trial court refused to instruct the jury in this manner with regard to the felony murder count. The trial court based its ruling upon *People v. Ellis* (1981), 93 Ill. App. 3d 981, 984, 418 N.E.2d 88, 90, *cert. denied* (1982), 456 U.S. 907, 72 L. Ed. 2d 165, 102 S. Ct. 1755, wherein the court stated:

"Defendant contends the trial court committed error by refusing to instruct the jury to find that he had only the requisite mental state to commit involuntary manslaughter, a lesser-included offense of murder. The State's response is that involuntary manslaughter requires the mental state of recklessness, and felony murder does not require that any mental state be shown.

Once again, we adopt the reasoning of this court set forth in *People v. Weathers* (1974), 18 Ill. App. 3d 338, 309 N.E.2d 795. In *Weathers*, the defendant was charged with and found guilty of murder, armed robbery and attempted robbery. The defendant argued the trial court erred in refusing to instruct the jury as to involuntary manslaughter and reckless conduct. He based

the argument on the fact that, in his view, the jury could have found him guilty of an offense less than murder, *e.g.*, involuntary manslaughter. As here, it was the State's theory that defendant was guilty of murder under the so-called 'felony murder rule' (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3)). In *Weathers*, the court said:

> 'No intent is required, and the accused need not be the actual perpetrator of the killing. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326.) It follows, then, that it would be impossible for one committing a homicide during the course of a forcible felony to be guilty of manslaughter.' *Weathers*, 18 Ill. App. 3d 338, 346, 309 N.E.2d 795, 801.
>
> In the case at bar, defendant testified that he participated in the robbery. For that reason, a finding by the jury of manslaughter or reckless conduct could not be premised. Therefore, the trial court did not err in refusing to give defendant's proposed instructions regarding lesser offenses."

■ Although we agree that in most instances, the reduction in culpability due to passion should not be available as a partial defense to a felony murder charge, we believe that under the unusual fact situation presented by defendant's testimony in the instant case, the jury should have been given the provocation—voluntary manslaughter instruction in conjunction with the felony murder charge. As defendant points out, while either "unreasonable self-defense" or sudden and intense passion resulting from serious provocation reduces an offense from murder to manslaughter, the same diminished mental state is not a defense to the crime of aggravated battery. (*People v. Chatman* (1981), 102 Ill. App. 3d 692, 430 N.E.2d 257; *People v. Mosley* (1979), 68 Ill. App. 3d 721, 386 N.E.2d 545; *People v. Christiansen* (1981), 96 Ill. App. 3d 540, 421 N.E.2d 570.) Therefore, a defendant facing two people in mutual combat can be seriously provoked, and if he kills both, he is guilty of two counts of voluntary manslaughter. It would be absurd to state that under the identical facts, if one of the victims dies and one lives, he is now guilty of murder because as to the one that lives, he is guilty of aggravated battery, and hence, under the felony murder doctrine, the affirmative defense of provocation is inapplicable. We agree with defendant that such a result is contrary to common sense. Furthermore, in *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903, a case involving a charge of felony murder, the Illinois Supreme Court stated that it would have been error for the trial court to refuse to give a voluntary manslaughter instruction pursuant to section 9—2(a) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)).

One of the rationales behind the felony murder doctrine (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)) is that a person who intends to commit a forcible felony should not be excused from the unintended results of his actions which occur during the course of the original felony. A person who intends to rob a shopkeeper or rape an individual is not allowed to claim that he was provoked by his victim or to raise any other affirmative defense if in the course of committing the original felony, the intended victim or any other person is killed. (*People v. Moore* (1983), 95 Ill. 2d 404, 447 N.E.2d 1327.) Once a person intends to commit a forcible felony and takes a substantial step to carry out that intent, he is liable for all of the actual results of his actions, even if they are unintended. (*People v. Doherty* (1963), 28 Ill. 2d 528, 193 N.E.2d 37.) An individual cannot claim that he was provoked by a person against whom he has already committed or attempted to commit a forcible felony.

However, in the instant case, according to defendant's version, he had no felonious intent when he initially approached Duckworth and Woods. Defendant claims that he committed no felony and formed no felonious intent until he was provoked by both Woods and Duckworth drawing knives on him. He contends that the jury could have believed his version of the events and concluded that Duckworth was the initial aggressor, that defendant became provoked by her actions, that defendant acted in self-defense and in passion in hitting her but that his actions were unreasonable because they were too severe a response, that Woods pulled a knife on him, and that defendant also acted out of intense passion and self-defense in striking and stabbing Woods. We also note that the jury could have concluded, based upon defendant's testimony, that defendant's initial actions against Duckworth and all of his actions against Woods were the result of intense passion due to provocation, but that the final attack on Duckworth constituted an aggravated battery. Even if the jury believed this scenario, according to the instructions, the jury would be obligated to find defendant guilty of felony murder.

As this court stated in *People v. Bolden* (1985), 132 Ill. App. 3d 1047, 1058, 477 N.E.2d 1380, 1387:

> "We hold today that when the defendant in a murder trial introduces some evidence of intense passion or of unreasonable belief, it is to be treated as a partial affirmative defense and the burden is on the State to negate the elements which would lead to a verdict of voluntary manslaughter."

As the court stated in *People v. Rodriguez* (1981), 96 Ill. App. 3d 431, 435-36, 421 N.E.2d 323, 326:

"Very slight evidence upon a given theory will justify an instruction. *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 52; *People v. Harris.*

\*\*\* We recognize that the victim and an apparently disinterested witness testified that the victim was brutally beaten by the defendants and Nuncci without provocation and that a jury would not be likely to accept the defendants' diametrically opposed version of the events. However, the credibility of the witnesses can only be resolved by the jury, not by the trial court. (*People v. Dowdy* (1974), 21 Ill. App. 3d 821, 316 N.E.2d 33.) The defendants were entitled to their theory of defense even if the trial judge believed that the evidence offered in support of that defense was inconsistent or of doubtful credibility. *People v. Woodward* (1979), 77 Ill. App. 3d 352, 395 N.E.2d 1203.

\*\*\* A defendant is entitled to the benefit of any defense shown by the evidence, even if the facts on which such defense is based are inconsistent with the defendant's own testimony. *People v. Bratcher; People v. Woodward.*"

■■ ■ We hold that where evidence has been presented that the provocation occurs prior to the time that a defendant forms a felonious intent or commits a forcible felony, the partial affirmative defense of voluntary manslaughter based upon provocation should be available, and the jury should be instructed accordingly. Because the trial court refused to give an instruction pursuant to section 9—2(a) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)), regarding the felony murder charge, defendant's conviction on count IV, which charged him with felony murder, must be reversed. We note, however, that defendant was found guilty on three additional separate counts of murder, and the trial court imposed a sentence of 40 years' imprisonment on the murder conviction for count I only. Since no sentence was imposed for the felony murder conviction (count IV), the reversal of this conviction does not alter the defendant's sentence or necessitate resentencing.

Defendant raises six additional alleged errors relating to the jury instructions in this case. We first note that none of these alleged errors were brought to the attention of the trial court, and only one of these alleged errors is raised in either of the two post-trial motions filed on defendant's behalf. As the Illinois Supreme Court stated in *People v. Huckstead* (1982), 91 Ill. 2d 536, 543-44, 440 N.E.2d 1248, 1251-52:

"It is well established that the failure to object at trial to an asserted error in jury instructions waives the question (*People*

*v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; *People v. Roberts* (1979), 75 Ill. 2d 1, 14) and that no party may raise on appeal the failure to give an instruction unless he tendered it at trial (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; *People v. Underwood* (1978), 72 Ill. 2d 124, 129; 73 Ill. 2d R. 366(b)(2)(i)). This court has also repeatedly recognized that issues not raised in a post-trial motion following a jury trial are effectively waived for appellate review. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181; *People v. Foster* (1979), 76 Ill. 2d 365, 380; *People v. Coles* (1979), 74 Ill. 2d 393, 397.) * * *
  * * *
  * * * [W]e have consistently emphasized the limited nature of the plain-error exception to the waiver rule created by Rule 451(c). (*People v. Roberts* (1979), 75 Ill. 2d 1, 14-15; *People v. Underwood* (1978), 72 Ill. 2d 124, 129-30.) The exception is restricted to the correction of 'grave errors' (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Jenkins* (1977), 69 Ill. 2d 61, 66) or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Joyner* (1972), 50 Ill. 2d 302, 307."

  We are firmly convinced that the evidence which was presented in this case overwhelmingly indicates that defendant was guilty of all of the offenses he was convicted of. This was certainly not a case where the facts were closely balanced. No fewer than six eyewitnesses testified that defendant committed an unprovoked murder as well as aggravated battery. Furthermore, several other witnesses presented testimony which indicated that the acts giving rise to the convictions were premeditated and were motivated by defendant's desire for revenge against the two victims. This is in contrast to the uncorroborated testimony presented by defendant. We can find no fundamental unfairness inherent in the instructions given to the jury in this cause and conclude that any errors in the instructions were not the type of "grave errors" which Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)) was designed to correct.

  Furthermore, we fail to see how defendant was seriously prejudiced by any of the alleged errors in the jury instructions. Defendant first contends that the issue instruction as to the murder charges in counts I through III was erroneous because it informed the jury that certain affirmative defenses only had to be disproved in the alternative instead of properly informing the jury that each of these affirmative defenses had to be disproved in order to convict defendant of

murder. (*People v. Bolden* (1985), 132 Ill. App. 3d 1047, 477 N.E.2d 1380.) The problem with the instruction in question as it was originally given to the jury was that the word "and" was used to correct the propositions instead of the word "or." This error was noticed by the trial court after the jury had begun their deliberations. The error was corrected on the face of the instruction, the written instruction was returned to the jury, and the jury's attention was called to the correction. Defense counsel acquiesced in this procedure, stating:

"I would just like the record to reflect that we had to modify the murder issues instruction, No. 29, by my recollection at approximately a quarter after ten, to change the disjunctive in the third proposition to the conjunctive to accurately reflect the law that was inadvertently submitted to the jury incorrectly."

The trial judge then stated:

"THE COURT: I think that the record should further show that it was corrected on its face at that time and given back to the jury and their attention called to the correction pursuant to conference with counsel prior thereto."

■ Although in hindsight we believe that the trial court should have read the corrected instruction to the jury instead of simply resubmitting the corrected written instruction (see, *e.g., People v. Gomez* (1980), 80 Ill. App. 3d 708, 399 N.E.2d 1368), we do not believe that this failure requires the reversal of the murder convictions on counts I through III. Defense counsel was satisfied with the procedure, the corrected written instruction was given to the jury, and the corrections were pointed out to the jury. Under these circumstances, we do not believe that the trial court's failure to read the corrected instruction amounts to reversible error.

■ Defendant also argues that his convictions for armed violence and unlawful use of a firearm by a felon must be reversed because the jury was not instructed that in order to convict defendant of these charges, the State had to prove beyond a reasonable doubt that defendant did not act in self-defense. Defense counsel did not request a self-defense instruction regarding these charges, and these issues were not raised in either of the post-trial motions filed on defendant's behalf. Consequently, we deem these issues to be waived. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) *People v. Wells* (1982), 110 Ill. App. 3d 700, 442 N.E.2d 1341, the case relied upon by defendant for the proposition that these alleged instruction errors constitute plain error, is readily distinguishable on the basis that in *Wells*, the facts were closely balanced, whereas in the instant case, defendant was convicted on the basis of overwhelming evidence. Fur-

thermore, the defendant's own testimony reveals that defendant was not entitled to a self-defense instruction regarding these two charges. According to defendant's version of the incidents, after the scuffle with the victim, he went to a vehicle to retrieve a gun. He already had a knife in his hand at that time. Under these circumstances, we fail to see how the jury could have concluded that defendant was acting in self-defense in arming himself. Consequently, we conclude that the failure to instruct the jury on self-defense regarding the offenses of armed violence and unlawful use of a firearm by a felon does not constitute reversible error.

█ Defendant next contends that the self-defense instruction which was given regarding the murder counts was defective because it did not advise the jury that a person has a right to use deadly force to prevent the commission of a forcible felony. Defendant did not tender an instruction which contained this language, and this issue was not raised in either of defendant's post-trial motions. Consequently, this issue has been waived. (*Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248.) *People v. Milton* (1979), 72 Ill. App. 3d 1042, 390 N.E.2d 1306, the case relied upon by defendant for the proposition that failure to instruct the jury that a person has a right to use deadly force to prevent the commission of a forcible felony constitutes plain error, is partially distinguishable on the basis of the fact that in *Milton*, there was substantial evidence to indicate that a forcible felony was being committed against the defendant, whereas in the instant case, the overwhelming evidence indicated that defendant was the initial aggressor and that no forcible felony was committed against him. To the extent that the majority opinion in *Milton* indicates that the failure to include the "forcible felony" language in the self-defense instruction always constitutes plain error, we choose to follow the dissenting opinion in *Milton* and the court's opinion in *People v. Townsend* (1985), 136 Ill. App. 3d 385, 483 N.E.2d 340, which indicate that prejudice must be shown under these circumstances in order to require a reversal. As the court stated in *Townsend*:

> "[W]e *** find it untenable to suggest that the jury would have reached an opposite verdict on the very same evidence had the 'forcible felony' language been given, and therefore conclude that any error by the trial court in refusing to give it was harmless." (136 Ill. App. 3d at 393, 483 N.E.2d at 346.)

We deem this comment to be equally applicable in the instant case, and conclude that the failure to include the "forcible felony" language in the self-defense instruction was harmless error.

█ Defendant also contends that the trial court erred by not de-

fining for the jury certain terms used in the jury instructions, such as "provokes" and "reasonably believes." However, these instructions were not requested by defense counsel, and this issue was not included in either of defendant's post-trial motions. As defendant concedes, the failure to define these terms is not plain error. (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.) Consequently, this issue has been waived.

■ Defendant next contends that the trial court erred by failing to give the jury any limiting instruction regarding defendant's prior convictions. Defense counsel did not tender any such instruction; however, this issue was included in one of defendant's post-trial motions. This issue has been waived. (*Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248.) Additionally, as the State points out, the matter was handled with delicacy, and the prior convictions were not overemphasized. Furthermore, as the court stated in *People v. Foster* (1982), 103 Ill. App. 3d 372, 380, 431 N.E.2d 430, 437:

> "[W]here the competent evidence shows beyond a reasonable doubt that a defendant is guilty, an error in the admission of evidence of other offenses does not call for reversal when the jury could not have reasonably found defendant not guilty. (*People v. Tranowski* (1960), 20 Ill. 2d 11; *People v. Arbuckle* (1979), 75 Ill. App. 3d 826.)"

We conclude that the jury could not have reasonably found defendant not guilty in the instant case, and conclude that the failure to give a limiting instruction was harmless error.

■ Defendant also argues that the instruction concerning the credibility of witnesses was improperly drafted because it referred to "he" to the exclusion of "she," thereby precluding the jury from applying this instruction to the testimony of Duckworth. A properly drafted instruction was not tendered to the trial court, and this issue was not presented in either of the post-trial motions. We fail to see how defendant was prejudiced by this improperly drafted instruction in light of the overwhelming evidence of defendant's guilt. Consequently, we conclude that this issue was been waived. *Huckstead*, 91 Ill. 2d 536, 440 N.E.2d 1248.

■ Defendant next contends that he was denied the effective assistance of counsel at his trial. The United States Supreme Court enunciated the standard to evaluate the ineffectiveness of assistance of counsel in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. This standard was expressly adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1255, *cert. denied* (1985), 471 U.S. 1044,

85 L. Ed. 2d 335, 105 S. Ct. 2061. The standard is that the constitutionally guaranteed assistance of counsel has not been provided if the defendant can prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. (*Strickland,* 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) A defendant must establish that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. (466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) The inquiry into counsel's performance must be whether counsel's assistance was reasonable considering all the circumstances. 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

As this court stated in *People v. Costales* (1987), (4th Dist. Dec. 30, 1987), No. 4—87—0388, slip op. at 7, "Every criminal defense attorney is subject to second-guessing by his client upon the client's receiving a conviction after trial. *** The Supreme Court in *Strickland* was aware of this propensity for second-guessing and warned the courts against it, stating that the reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' (*Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.)" Furthermore, as the Supreme Court stated:

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

A review of the evidence in the instant case established that even assuming, *arguendo,* that defendant's trial counsel made the numerous mistakes now complained of at defendant's trial, we are convinced that no prejudice to defendant resulted. As we stated previously in this opinion, the evidence of defendant's guilt of each of the offenses he was charged with was overwhelming. No less than six eyewitnesses testified to facts which indicated that defendant committed an unprovoked murder and aggravated battery, and that he was armed

with a gun when he had no need for self-defense. Numerous other witnesses presented evidence which indicated that defendant had a motive for the aggravated battery and killing, and that the crimes were premeditated. The only witness who testified that the incidents occurred in any other manner was defendant himself. Defendant testified that the incident happened very fast, that he could not remember how certain things happened, and that he "must have" stabbed Woods. The jury obviously did not believe any of defendant's testimony, and from our review of the transcript of defendant's testimony, we fail to see how any rational juror could have believed defendant's totally incredible version of the events.

The jury instructions in this case were extremely complex. As we previously stated, we do not consider any of the alleged errors in the jury instructions which were not tendered at trial to be so grave as to have resulted in an unfair trial, nor do we believe that defense counsel's failure to tender these instructions constitutes ineffective assistance of counsel according to the standard set forth by the United States Supreme Court in *Strickland*. As defendant points out, the unlawful use of a firearm by a felon should have been severed from the other charges (*People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496; *People v. Bracey* (1977), 52 Ill. App. 3d 266, 367 N.E.2d 351), and defense counsel's failure to secure a severance was a mistake. However, we deem this error to be harmless in light of the overwhelming evidence of defendant's guilt. (*People v. Foster* (1982), 103 Ill. App. 3d 372, 431 N.E.2d 430.) Defendant's contention that defense counsel failed to lay a proper foundation so that defendant could testify regarding various State's witnesses' bias is without merit. The individual witnesses should have been cross-examined regarding their bias, rather than questioning defendant in this regard. (*People v. Thompson* (1979), 75 Ill. App. 3d 901, 394 N.E.2d 422.) Furthermore, ample evidence of the bias of the various witnesses was presented, and this testimony would have been cumulative to that which was already presented. Although evidence of bias may be introduced even if it is cumulative (*Thompson*, 75 Ill. App. 3d 901, 394 N.E.2d 422), under the circumstances, we do not believe that the failure to elicit this evidence resulted in prejudice to the defendant or constituted ineffective assistance of counsel.

In light of the clearly overwhelming evidence of defendant's guilt, we are convinced that the outcome of defendant's trial was not in any way affected by any unprofessional errors committed by his trial counsel. Consequently, we conclude that defendant has failed to show sufficient prejudice to require reversal of his convictions based upon

ineffective assistance of counsel.

██ Defendant next contends that his right to due process was denied where, after being "Mirandized" (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), the State elicited testimony on direct examination indicating that the defendant did not complain of any injury. Defendant's contention that the State violated his constitutional rights where they introduced evidence of his post-arrest silence, or its functional equivalent, is based upon *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, wherein the United States Supreme Court held that the State could not impeach an exculpatory story, told for the first time at trial, by cross-examination after the defendant had been "Mirandized."

As defendant points out, where a defendant is arrested and advised of his right to remain silent and right to have counsel, and then relies on those rights by remaining silent or requesting counsel, such action in reliance on the advice given to him by the authorities cannot be used to discredit his trial defense whether that defense be self-defense or insanity. (See *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133; *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634.) Defendant also points out that four police officers testified that defendant did not complain of physical injury or request medical attention after his arrest. Defendant contends that this violates the rules of law set forth in *Doyle*, *Hale*, and *Wainwright*.

However, as the State points out, *Doyle* and the other cases relied upon by defendant on this issue do not apply where a defendant does not remain silent. The testimony of several police officers indicated that defendant made numerous statements indicating that he committed the offenses because the police failed to take action in response to a crime which had been committed against one of his relatives. As the United States Supreme Court stated in *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180:

"*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." (*Charles*, 447 U.S. at 408, 65 L. Ed. 2d at 226, 100 S. Ct. at 2182.)

Consequently, we conclude that defendant's argument based upon an alleged *Miranda* violation is without merit.

Defendant also contends that he was deprived of his right to explain his mental state at the time he armed himself, and the failure to do so deprived him of the ability to demonstrate a reasonable doubt as to his guilt. The defendant argues that he was unconstitutionally restricted from presenting evidence of his state of mind when the trial court refused to allow testimony which would have shown the defendant's apprehension of his adversaries. The alleged error surrounds testimony that, upon arriving across the street from the Modest Tavern, an individual approached the vehicle in which the defendant was riding and handed the defendant a gun, telling the defendant that he might need it because Clay Woods and Mary Duckworth were present. During questioning of the defendant, counsel elicited the fact that an unnamed individual approached the car, told the defendant that Duckworth and Woods were present, and handed him the weapon. Counsel then asked defendant:

"Q. Did that individual indicate to you why he was giving you the handgun?"

After the State objected, and out of the hearing of the jury, counsel argued that the testimony would indicate that the individual told the defendant, "You might need this, because Mary Duckworth and Clay Woods are over there." Defense counsel argued that since the individual had knowledge of the incident regarding the defendant's cousin, the testimony went to the state of mind of the declarant. After discussing this issue with counsel, the court stated:

"Without further foundation as to the identity of the people present, time, normal foundation for any conversation, it will not be allowed."

Defense counsel made no further attempt to establish a foundation for this conversation or to have the contents of this conversation admitted into evidence.

Defendant steadfastly refused to divulge the name of the person who allegedly gave him the gun, and he was subsequently held in contempt of court and sentenced to a six-month term of imprisonment (to be served concurrently with the other sentences which were imposed) for refusing to divulge this name when directed to do so by the trial court.

On appeal, defendant argues that the trial court refused to allow him to testify regarding the conversation he allegedly had with the person who gave him the gun as a sanction for refusing to divulge this person's name.

In support of this argument, defendant relies upon *People v. Cole* (1964), 30 Ill. 2d 375, 380, 196 N.E.2d 691, 694, wherein the Illinois Supreme Court stated:

"A defendant is entitled to all reasonable opportunities to present evidence which might tend to create a reasonable doubt as to his guilt."

However, we agree with the State's argument that the trial court's ruling, on foundation grounds, was proper. Furthermore, sufficient evidence of defendant's intent was introduced at trial, and therefore the exclusion of this testimony was, at worst, harmless error. (*People v. Smalley* (1973), 10 Ill. App. 3d 416, 294 N.E.2d 305.) The State also points out that immediately after the court's ruling, defendant stated that he indicated to the individual that he did not want the gun, and placed it on the floor of the car upon exiting. We agree with the State's argument that such testimony was inconsistent with the defendant's alleged fear for his safety, and that therefore, defendant's argument must fail.

Defendant next contends that the State's closing argument was inflammatory and prejudicial. Defendant points out that the prosecutor displayed photographs of the deceased, despite a prior trial court ruling that the photographs should not be displayed during closing arguments. After defense counsel's objection, the trial court again admonished the prosecutor not to display the photographs.

Defendant also complains of the following statement made by the prosecutor during closing argument:

"And that's Clay—he's an eyewitness, and his testimony screams out—I died a violent death."

Defendant contends that this argument is equivalent to final arguments which were held to be improper where prosecutors discussed the rights of the deceased, such as *People v. Beringer* (1987), 151 Ill. App. 3d 558, 503 N.E.2d 778, *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 827, 494 N.E.2d 677, 686-87, and *People v. Starks* (1983), 116 Ill. App. 3d 384, 390, 451 N.E.2d 1298, 1302-03.

We first note that defendant has waived his objection to the reference to the victim's violent death since no objection was made. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) Defendant failed to include any issues in his post-trial motion regarding the closing argument, thereby waiving all objection to the closing argument. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) The cases relied upon by defendant are distinguishable in that the comment in the instant case did not really refer to the deceased's rights. Additionally, comments on the violent nature of an offense are proper. (*People*

*v. Poree* (1983), 119 Ill. App. 3d 590, 456 N.E.2d 950.) Furthermore, reversal of the defendant's conviction because of the prosecutor's remarks is unwarranted unless those remarks influenced the jury in a manner that resulted in substantial prejudice to the defendant. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881; *People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140.) We do not see any substantial undue prejudice to defendant resulting from the prosecutor's closing argument.

■■ Defendant next contends that the photographs of Mary Duckworth and Clay Woods which were admitted into evidence were gruesome and unnecessarily shocking, and that their prejudicial effect outweighed any probative value.

As the court stated in *People v. Christen* (1980), 82 Ill. App. 3d 192, 197, 402 N.E.2d 373, 377-78:

> "Previous Illinois decisions have long held that the admission of a photograph of a murder victim is within the sound discretion of the trial court and where the photograph is probative of some material fact it is admissible despite its gruesome nature. (*People v. Campbell* (1979), 77 Ill. App. 3d 804, 396 N.E.2d 607; *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.) When a photograph serves no purpose other than to inflame and prejudice the jury, however, it must be excluded. *People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783; *People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121, *cert. denied* (1977), 434 U.S. 988, 54 L. Ed. 2d 484, 98 S. Ct. 620."

The State argues that the photographs in question were clearly relevant to corroborate the injuries of both victims, which were material to the State's case. The State also points out that their effect was minimized when the court allowed only black and white versions to be taken to the jury room.

The photographs in question depicted the conditions of the victims and the blood located near the tavern. Although they were extremely gruesome, they did corroborate material elements of the State's case. Therefore, we conclude that the photographs were properly admitted.

■■ Defendant's next argument is that the court improperly denied defense counsel a continuance to obtain further evidence.

Defendant points out that the existence of crucial evidence was exposed six days prior to trial, and argues that the court abused its discretion in refusing to grant a continuance in order to allow defense counsel to investigate prior violent acts of Mary Duckworth and Clay Woods.

The record reflects that on December 3, 1985, the defendant filed a motion for additional discovery regarding prior acts of violence. The State complied, and defendant received the information regarding the prior violent acts of Duckworth and Woods on December 31, 1985. Trial was set to begin on January 6, 1986. The defendant moved to continue the cause, and a hearing pursuant to the motion was held on January 2, 1986. At that time, defense counsel stated that the People had not used dilatory tactics, but that the defense needed additional time to discover information regarding prior convictions of the two victims. The court denied the motion, stating that there were at least nine days until the defense would present its case, during which time discovery could proceed. The judge ruled that the motion would be considered as continuing. Immediately prior to trial, counsel renewed the motion. The defendant again indicated the need for additional time to determine the nature of the violent acts of the victims. The court denied the motion, stating that the case had been on file for four months, that the names of the victims were known to defense counsel for some time, and he could have formulated his own investigation from this information.

Initially, we note that this issue has been waived because it was not preserved in defendant's post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, counsel had ample time to investigate the circumstances regarding the victim's violent acts and should have been more diligent in requesting information from the State. Therefore, we conclude the court properly exercised its discretion. *People v. Lyons* (1975), 26 Ill. App. 3d 358, 325 N.E.2d 89.

Furthermore, we conclude the defendant was not prejudiced by the lack of a continuance because defense counsel was able to present evidence regarding the victims' reputations for violence. Defense counsel elicited testimony which demonstrated that unprovoked violent acts had been committed by Clay Woods, evidence of Woods' prior convictions was introduced before the jury, and they were instructed on the use of force by an aggressor.

As the court stated in *Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 714-15, 474 N.E.2d 456, 457:

> "The decision to grant or deny a motion for continuance is addressed to the sound discretion of the trial court and should not be overturned on appeal unless that discretion has been abused. (*Huber v. Reznick* (1982), 107 Ill. App. 3d 529, 543[, 437 N.E.2d 828]; *City of Chicago v. Southgate Corp.* (1980), 86 Ill. App. 3d 56, 59[, 407 N.E.2d 881].) A critical factor in the review

of such rulings is whether the party which sought the continuance showed diligence in proceeding with the cause. (*Trillet v. Bachman* (1981), 96 Ill. App. 3d 477, 481[, 421 N.E.2d 580]; *Marshall v. Henning* (1980), 91 Ill. App. 3d 180, 182[, 414 N.E.2d 529].) Once a cause is reached for hearing, no motion for continuance is to be heard without sufficient excuse being shown for the delay in so moving (87 Ill. 2d R. 231(f)), and the movant is then required to present especially grave reasons to support his request. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 656[, 435 N.E.2d 852].)"

We find no abuse of discretion inherent in the trial court's decision to deny the motion for continuance in the instant case.

■■■ Defendant next contends that confusion existed due to erroneous instructions related to the offenses of murder, armed violence, unlawful use of a firearm, and with regard to the self-defense instruction, and that, consequently, the aggravated battery conviction should be reversed. Defendant bases this argument upon his arguments regarding the allegedly erroneous instructions. Defendant cites no authority in his original brief in support of this argument, and he cites and exclusively relies upon *People v. Grabbe* (1986), 148 Ill. App. 3d 678, 499 N.E.2d 499, in his reply brief, stating that where the jury may have been misled concerning the law applicable to murder, armed violence, and possession of a firearm, and where the jury was not properly instructed on how to evaluate highly prejudicial evidence, the error tainted the verdict as to aggravated battery.

Failure to cite authority in an appellate brief normally constitutes waiver pursuant to Supreme Court Rule 341 (107 Ill. 2d R. 341), unless, after a thorough search, no authority can be found. (*Morris v. Doss* (1987), 163 Ill. App. 3d 1057, (Green, P.J., specially concurring).) Furthermore, as we have previously stated, the majority of the issues raised by defendant regarding the jury instructions are without merit, and the evidence supporting defendant's conviction for aggravated battery was overwhelming. Consequently, we conclude that defendant's argument regarding the aggravated battery conviction is without merit.

■■■ Defendant's final argument is that his consecutive sentences were illegal where the facts did not justify the sentence and where the court considered an erroneous factor in aggravation.

On July 7, 1986, a hearing was held to determine defendant's sentence. After brief testimony and the introduction of letters on behalf of the defendant, the court indicated that it was considering the evidence at trial, the presentence report, and testimony presented in ag-

gravation and mitigation. The court noted that the defendant was intelligent and articulate. The court found that the offense committed caused serious harm, that the defendant had a history of criminality, was likely to commit other crimes, and lengthy incarceration was needed for the protection of the public. The defendant requested the minimum sentences statutorily allowed, while the State requested extended-term sentences, to run consecutively, based upon the heinous, brutal nature of the offenses.

The court imposed a sentence of 40 years on murder, 30 years on armed violence, and five years on unlawful use of a weapon by a felon, all sentences to be consecutive, for a total period of 75 years.

Defendant argues that the court, in determining that there were aggravating factors that justified consecutive sentences, misapplied the law by finding as an aggravating factor that a person was killed.

The court, in fixing the sentence to be imposed, stated:

"The court finds, of course, that, as stated previously, there are aggravating factors, the first Statutory ground being that your conduct caused serious harm. There can be no more serious harm than murder; that you do have a history of criminal activity; that sentencing is necessary to deter others from taking the law into their own hands; that your attitude indicates that you're likely to commit other crimes in the future; that a lesser sentence would diminish the seriousness of the offense or offenses that you have committed; that the protection of society necessitates lengthy incarceration."

After pronouncing the sentences, the court stated:

"Based upon the nature and circumstances of the offenses committed, the history and character, the Court does feel that such term is required to protect the public from further criminal conduct, for the aggravating factors hereinbefore stated, the Court does order each of these sentences to be served consecutively."

We do not believe that the trial court's singular, brief comment that "[t]here can be no more serious harm than murder" indicates that the trial court improperly considered the victim's death as an aggravating factor which resulted in an increased sentence. The trial judge was simply following the list of aggravating factors contained in section 5—5—3.2(a) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)), and made only this one brief comment regarding subsection (a)(1) of section 5—5—3.2 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)(1)). In contrast to this one brief comment made in passing, the trial court heavily em-

phasized that the reason he was making the sentences consecutive was to protect the public from further criminal conduct.

Section 5—8—4(b) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b)) provides:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

The trial court's decision to impose consecutive sentences was clearly based upon the foregoing provision, and the basis for his opinion that the consecutive sentences were necessary to protect the public is fully explained in the record and is amply supported by the evidence in this case.

Even assuming, *arguendo*, that the trial judge's brief comment now complained of constituted the consideration of an improper factor in aggravation, we are convinced that the trial court placed little or no weight on this improper factor. As the Illinois Supreme Court stated in *People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340:

"It is clear from the decisions of this court and the appellate court that reliance on an improper factor in aggravation does not always necessitate remandment for resentencing. Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing. (*People v. Conover* (1981), 84 Ill. 2d 400, 405; *People v. Gardner* (1982), 105 Ill. App. 3d 103, 118, *People v. Teague* (1981), 101 Ill. App. 3d 993, 996; *People v. Hart* (1981), 101 Ill. App. 3d 343, 344; *People v. Allen* (1981), 97 Ill. App. 3d 38, 40.) However, where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required. *People v. Reid* (1983), 94 Ill. 2d 88, 91; *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1019; *People v. Carmack* (1982), 103 Ill. App. 3d 1027, 1037-38; *People v. Hicks* (1981), 101 Ill. App. 3d 238, 244; *People v. Devine* (1981), 98 Ill. App. 3d 914, 926-27; *People v. Fowler* (1981), 98 Ill. App. 3d 202, 206-07."

As we previously stated, even if the trial court's brief statement now complained of constituted consideration of an improper factor in aggravation, we are convinced that any reliance upon this factor was in-

significant. The trial court's overriding purpose for the imposition of consecutive sentences was the protection of the public from any further criminal conduct by the defendant. Furthermore, at his sentencing hearing, defendant did not object to the circuit court's reference to the fact that murder constituted serious harm. Therefore, defendant has waived his contention that the circuit court impermissibly relied upon that factor in imposing sentence. *People v. Montague* (1986), 149 Ill. App. 3d 332, 500 N.E.2d 592.

■■■ Defendant finally contends that neither his background (consisting of one battery and one aggravated battery conviction, the latter offense arising out of a domestic violence situation), nor the facts of this case justify imposition of consecutive sentences. We disagree. The evidence in the record clearly and overwhelmingly indicates that defendant sought out the altercation with both victims because he wanted to retaliate for an incident wherein one of his relatives was injured. The murder and aggravated battery were premeditated and extremely brutal. Defendant had a prior criminal history involving violent crimes against other individuals, as indicated by his criminal record as well as his own testimony at the sentencing hearing, which demonstrated that defendant had frequently engaged in physical altercations to remedy some perceived injustice. The sentences were clearly within the statutory guidelines and constituted a proper exercise of the trial court's discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) We find no compelling reason to alter defendant's sentences.

For the reasons stated herein, defendant's conviction for felony murder is reversed; however, the judgment and sentences of the circuit court of Vermilion County are hereby affirmed in all other respects.

Affirmed in part and reversed in part.

GREEN, P.J., and McCULLOUGH, J., concur.