29 September 1999

NO. 4-96-0996

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Logan County

JON R. MORGAN, ) No. 95CF101

Defendant-Appellant. )

) Honorable

) Gerald G. Dehner,

) Judge Presid­ing.

__________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

Defendant Jon R. Morgan was tried as an adult and convicted after a jury trial in the circuit court of Logan County of the first degree murder (720 ILCS 5/9-1(a) (West 1994)) of his grandmother and the second degree murder (720 ILCS 5/9-2(a)(1) (West 1994)) of his grandfather.  He was sentenced to consecutive terms of imprison­ment totalling 75 years.  On appeal, he argues the trial court erred by (1) granting the State's motion to try him as an adult; (2) admitting certain statements into evidence
; (3) excluding testimony regarding prior violent conduct by the victims; (4) refusing to dismiss the felony murder counts; and (5) refusing to give an instruction on second degree murder as to the felony murder counts.  We affirm in part and reverse in part.

I. BACKGROUND

On an April day in 1995, 14-year-old Jon was late to class and received an in-school detention.  According to Jon, he was asleep at about 6:30 p.m. on April 27, 1995, when his grandfa­

ther, Keith Cearlock, awakened him and demanded an explanation for the notice of detention he had received.  Keith berated Jon for 10 to 15 minutes.  Jon yelled back.  Keith punished Jon by having him bend over while Keith beat him on the buttocks with a razor strap.  After enduring five strong blows, Jon went into the bathroom.  He knew where Keith kept a gun and decided to get the gun to kill himself.  Jon took a gun and box of ammunition from Keith's bedroom closet shelf, returned to the bathroom, loaded eight bullets into the gun, took aim, and fired at a bottle.  Because his grandfather had threatened in the past to kill him, he believed his firing the gun would provoke Keith to carry out the threat.  As Jon left the bathroom, he encoun­tered Keith coming toward him and shot him.  Lila Cearlock, his grand­mother, was standing in the hallway scream­

ing.  Jon shot Lila in the back as she ran out of the house.  He tried to fire another shot, but the gun jammed.  

The Lincoln police department responded to an emergency call to the Cearlocks' address.  Minutes later, Jon approached one of the officers, holding a pistol and a box of bullets, saying, "I did it.  I killed them."  
The officer took Jon to Michael Harberts, the officer in charge, who asked him why he did it.  Jon said, "[B]ecause they pissed me off.  I couldn't take it anymore so I shot them."  
Jon was placed under arrest.  

This case was originally filed in the juvenile court of Logan County.  The State filed a petition, pursuant to section 5-4 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-4 (West 1994)), seeking to have Jon tried as an adult.  The juvenile court granted the State's petition after a hearing.  

Jon was subsequently indicted on eight counts.  Counts I and II charged first degree murder of Lila and Keith, respectively, with intent to kill or do great bodily harm (720 ILCS 5/9-1(a)(1) (West 1994)); counts III and IV charged first degree murder of Lila and Keith, respectively, by knowingly committing an act causing great probability of death or great bodily harm (720 ILCS 5/9-

1(a)(2) (West 1994)); counts V and VII (Lila) and VI and VIII (Keith) charged first degree murder by attempting or commit­ting a forcible felony (720 ILCS 5/9-1(a)(3) (West 1994)).  The predicate felony for counts V and VI was aggravated battery (720 ILCS 5/12-

4(a) (West 1994)), and the predicate felony for counts VII and VIII was aggravat­ed discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1994)).  

Defense counsel filed a motion to suppress certain statements made by Jon to the police at the crime scene and while in custody.  The motion was denied after a hearing.    

After defense counsel disclosed his intent to raise the affirmative defense of self-defense (720 ILCS 5/7-1 (West 1994)) and the mitigating factor of "sudden and intense passion resulting from serious provocation" (720 ILCS 5/9-2(a)(1) (West 1994)), the State sought to bar second degree murder instruc­tions as to the felony murder counts.  The trial court initially denied the motion, but later reversed its ruling.  The trial court thereafter denied Jon's motion to dismiss the four counts of felony murder. 

At trial, the State sought to preclude Glenda Ashworth, Jon's mother, and Dr. Stuart Hart, defense expert, from testifying regarding prior violent conduct of the Cearlocks.  The trial court ruled in favor of the State and the defense made offers of proof.

The trial court instructed the jury on second degree murder (720 ILCS 5/9-2(a) (West 1994)) as to counts I through IV.  The jury found Jon guilty of first degree murder as to Lila and second degree murder as to Keith.  Jon was sentenced to consecutive terms of 58 and 17 years' imprison­ment, respectively.  

II. ANALYSIS

A. Transfer to the Adult Crimi­nal Justice System

The material in this section is not to be published pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23).

[Nonpublishable matertial removed under Supreme Court Rule 23.]

B. Evidentiary Rulings

The material in this section is not to be published pursuant to Supreme Court Rule 23.

[
Nonpublishable material removed under Supreme Court Rule 23.]

C. Felony Murder

The jury was instructed that Jon was charged with two types of first degree murder:  Type A (knowing or intentional) and Type B (felony).  Second degree instruc­tions were given only as to Type A.  The State offered six verdict forms, three for each victim: (1) not guilty, (2) guilty of first degree murder, and (3) guilty of second degree murder.   

We first consider whether Jon preserved the felony murder issues for appeal.  After he was denied second degree murder instructions on the felony murder counts, he made a motion to dismiss those counts, which was also denied.  He raised the issues again in his posttrial motion.  He did not, however, object to the use of general verdict forms.

   In 
People v. Thurman
, 223 Ill. App. 3d 196, 203, 584 N.E.2d 1069, 1074 (1991), the court held that even if the defendant was improper­ly charged with felony murder, his conviction would still stand, because "[i]t is well settled that a defendant convicted by a general verdict is guilty of any good count in the indictment to which proof is applicable."  
In 
Thurman
, the defendant was charged with first degree murder under each of the three sections of the statute.  The  general guilty verdict indicated "an intention to convict the defendant of first degree murder under sections 9-1(a)(1) and 9-1(a)(2), as well as felony murder under section 9-1(a)(3)."  
Thurman
, 223 Ill. App. 3d at 203, 584 N.E.2d 1074.   

Thurman
 relied on 
People v. Baker
, 127 Ill. App. 3d 565, 569, 469 N.E.2d 602, 605 (1984), in which the issue was whether the defendant could be sentenced for the underlying felony when he was convicted of multiple counts of murder, including felony murder, by a general verdict of guilty.  Because defendant offered no reason why a conviction of home invasion could not stand with a murder conviction on the basis of section 9-1(a)(1) or 9-1(a)(2), the sentence was affirmed.  
Baker
, 127 Ill. App. 3d at 569, 469 N.E.2d at 606; see also 
People v. Scott
, 148 Ill. 2d 479, 562, 594 N.E.2d 217, 253 (1992) (affirm­ing sentence for underlying felony where general verdict supports murder conviction under intentional and knowing theories as well as felony murder).  

We are reluctant to find an issue forfeited, however, where the defendant made the proper motions at trial and renewed his arguments in a posttrial motion.  Our decision to address these issues on the merits is reinforced by the emphasis placed on the felony murder theory by the prosecutor during closing argument.  The prosecu­tor argued repeatedly that the jury members should first consider the felony murder theory because, if they found the underlying felony proved, they need not deal with the considerable amount of evidence relating to defendant's mental state.    

Our decision is also buttressed by the decision in 
People v. Shaw
, 186 Ill. 2d 301, 329, 713 N.E.2d 1161, 1176 (1998), in which the supreme court rejected a claim of instruc­tional error because the jury was completely and thorough­ly informed of the three types of murder and "received separate verdict forms for each crime charged against defendant," including the underlying felony.  In the present case, the jury was instructed to consider whether Jon committed either of the alleged felonies, but was not asked to render a verdict for each crime charged, including the underlying felony and each individual count of murder
.

 We also conclude the verdict of second degree murder as to Keith cannot have been based on Type B, because the second degree instruc­tion was limited to Type A murder.  Howev­er, it is not possible to determine whether the verdict of first degree murder as to Lila was based on Type A or Type B.  As a result, the issues raised by the defendant with regard to felony murder affect only the conviction of first degree murder for the shooting of Lila.

1. 
Instructing the Jury on Felony Murder Regarding Lila's Death

Jon repeatedly challenged the State's theory at tri­al that his shooting of Lila could constitute felony murder.  He argued at trial--and repeats the argument on appeal--that, because aggravated battery and discharge of a firearm were inherent in his act of intentionally killing with a firearm, the trial court should not have instructed the jury on felony murder.  He contends that under the facts of this case, the rationale of the felony murder rule, "to deter individuals from committing forcible felonies by holding them responsible for murder if death results" (
People v. Pugh
, 261 Ill. App. 3d 75, 77, 634 N.E.2d 34, 35 (1994)), does not apply. For the reasons that follow, we agree.

Any time a person commits intentional or knowing murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 1996)), he necessarily causes great bodily harm.  The same conduct constitutes aggravated battery.  720 ILCS 5/12-4(a) (West 1996).  If he uses a gun, he necessarily discharges the firearm in the direction of another, thereby commit­

ting aggravated discharge of a firearm.  720 ILCS 5/24-1.2(a)(2) (West 1996).  Unless application of the felony murder rule is limited to cases in which a killing occurs during the commission of a felony consisting of conduct other than that inherent in the killing itself, 
all
 deliberate killings and all fatal shootings may be charged as felony murder.  This would not only effectively eliminate the second degree murder statute in such cases, but would also eliminate the need for the State to prove an intentional or knowing killing in most murder cases.  
People v. Kidd
, 295 Ill. App. 3d 160, 165, 692 N.E.2d 455, 459 (1998), 
appeal
 
denied
, 178 Ill. 2d 588, 699 N.E.2d 1035 (1998).

Scholarly writing and case law support exist for requiring the State to prove an independent felony when charging felony murder:

"It is the rule in some jurisdictions that the felony[]murder doctrine does not apply unless the underlying felony is so distinct from the homicide as not to be an ingredient thereof, indictable therewith, or convictable thereun­

der.  The felony murder doctrine does not apply where the felony is an offense includ­ed in the charge of homicide."  40 Am. Jur. 2d 
Homicide
 §66, at 520 (1999).

Thus, the "homicide must be committed in the perpetration of or an attempt to perpetrate a felony.  The death must be caused by an act in course of or in furtherance of the felony."  40 Am. Jur. 2d 
Homicide
 §67, at 523 (1999).   

Professor LaFave notes some jurisdictions hold:

"[T]he collateral felony must be a felony which is 'independent' of the conduct which kills; it must involve conduct separate from the acts of personal violence which constitute a neces­sary part of the homicide itself."  W. LaFave & A. Scott, Jr., Criminal Law §7.5, at 638 (2d ed. 1986). 

This approach could lead to a rule, which LaFave acknowledg­es Illinois rejected in 
People v. Viser
, 62 Ill. 2d 568, 343 N.E.2d 903 (1975), that "aggra­vated battery toward the deceased will not do for felony murder."  W. LaFave & A. Scott, Jr., Criminal Law §7.5, at 638 & n.104 (2d ed. 1986).  However, a rule requiring proof of an indepen­dent felony need not entirely bar felony murder prosecutions based on aggravat­ed battery.  

For example, in California, a defendant may not be 
sentenced to death for first degree murder unless the jury finds "special circumstances," one of which is that he committed the act resulting in death (1) during the commission or attempted commission of one of five specified felonies (
People v. Green
, 27 Cal. 3d 1, 49, 609 P.2d 468, 497, 164 Cal. Rptr. 1, 30 (1980)) and (2) "in order to advance an independent felonious purpose" (
Green
, 27 Cal. 3d at 61, 609 P.2d at 505, 164 Cal. Rptr. at 38)
.  If the underlying felony is "merely inciden­tal to the murder" because "its sole object is to facilitate or conceal the primary crime" (
Green
, 27 Cal. 3d at 61, 609 P.2d at 505, 164 Cal. Rptr. at 38
), felony murder does not apply.

People v. Jenkins
, 190 Ill. App. 3d 115, 545 N.E.2d 986 (1989), offers an example of a proper case for the application of the felony murder rule predicated on aggravated battery.  The defendant struggled with a police officer, whom he knew to be on duty at the time.  He was also aware the officer was holding a cocked and loaded gun.  The gun discharged, killing another officer.  
Jenkins
, 190 Ill. App. 3d at 127, 545 N.E.2d at 994.  The court held the defendant's conviction of felony murder was appropriate.  
Jenkins
, 190 Ill. App. 3d at 127, 545 N.E.2d at 994.  Similarly,  felony murder is properly charged when the defendant commits the indepen­dent felony of aggravated discharge of a firearm by engaging in a gun battle and a bystander is killed by return fire.  
Pugh
, 261 Ill. App. 3d at 78, 634 N.E.2d at 36.  

In both 
Jenkins
 and 
Pugh
, the defendant intended to commit an indepen­dent forcible felony and a death resulted from the use of violence.  Appli­cation of the felony murder rule in such cases advanc­es the "legisla­ture's concern for protecting the general populace and deterring crimi­nals from acts of vio­lence."  
People v. Lowery
, 178 Ill. 2d 462, 469, 687 N.E.2d 973, 977 (1997).  

One scholar suggests that a sensible rule is to permit a charge of felony murder only if the death results from assaultive conduct involving an independent felonious purpose:

"If the alleged underlying purpose of the felony[]murder rule is to deter the commission of felonies in a danger­ous fashion, the 'inde

pendent felonious purpose' merger rule serves as a plausible basis to identify the cases in which the felony[]murder rule is most likely to serve its deterrent purpose."  J. Dressler, Under­standing Criminal Law §31.07, at 469-70 (1987).

We agree and hold that the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself.  Because the record in this case fails to show the commission of a predicate felony that had an independent felonious purpose, we conclude that the trial court erred by instructing the jury that defendant could be convicted of first degree murder on a felony murder theory.

In so holding, we note that the points at trial during which the question of the sufficiency of the State's evidence as to felony murder becomes ripe are after the State rests and, again, after both sides have rested.  If the defendant makes a motion for directed verdict at the close of the State's case and the court at that point concludes the State's evidence was not sufficient to show an independent underlying felony, the motion should be granted.  If, after all of the evidence has been presented, the trial court concludes that the State's evidence is not sufficient, the court should refuse the felony murder instruction.  Instead, the court should simply instruct the jury on intentional or knowing murder.  720 ILCS 5/9-1(a)(1), (a)(2) (West 1996).  One advantage of proceeding in this fashion is to avoid hearings on motions to dismiss, at which the parties argue what they believe the evidence 
might
 or 
will
 show; instead, by deferring any ruling until the close of the State's case or the conference on instructions, the court does so in the context of what the evidence 
has
 
shown
.  

We acknowledge that the decision we reach in this case may seem inconsistent with the 1975 supreme court decision in 
Viser
. 
Viser
, however, did not consider the question presented here--

whether the predicate felony underlying a charge of felony murder must have an independent felonious purpose.

In 
Viser
, two off-duty police officers were having a conversation as they stood near the open driver's-side door of a car parked at the curb.  The defendants drove up in another car, stopped a few yards from the parked car, and jumped out and said, "'We'll teach those motherfuckers to block the road.'"  
Viser
, 62 Ill. 2d at 572, 343 N.E.2d at 905.  A fight ensued, and the attackers continued to kick and beat the officers after they fell to the ground.  Finally, defendant Viser twice jumped with both feet on the chest of one of the victims, who died as a result of his injuries.  
Viser
, 62 Ill. 2d at 575-76, 343 N.E.2d at 907.  The defendants were charged by indictment with intentional murder, knowing murder, or felony murder predicated on aggravated battery.  
Viser
, 62 Ill. 2d at 577, 343 N.E.2d at 907-08.  They argued on appeal that aggravated battery against the person who eventually dies may not be the underlying felony for a charge of felony murder, because battery is included in the offense of murder.  
Viser
, 62 Ill. 2d at 577, 343 N.E.2d at 908.  
Viser
 held that an unjustified attack on the person killed may be the basis for a charge of felony murder, rejecting
 a 
per
 
se
 rule that aggravated battery 
necessarily merges into the crime of murder.  
Viser
, 62 Ill. 2d at 579-80, 343 N.E.2d at 909.   T
his case raises a question that was not before the supreme court in 
Viser
.  Further, our answer to the question is consistent with the holding in that case because the rule enunciated here does not preclude a conviction for felony murder on facts such as those in 
Viser
, 
Jenkins
, and 
Pugh
.  

We also note that subsequent to the decision in 
Viser
, Illinois homicide law was amended to define the offenses of first and second degree murder, abolish the offense of voluntary man­

slaughter, and reword the definition of felony murder to conform to these changes.  Pub. Act 84-1450, eff. July 1, 1987 (1986 Ill. Laws 4221).  These amendments did not affect the range of underlying felonies that may support a charge of felony murder.  As a result, under 
Viser
, the homicide statute, and our decision here, aggravated battery and aggravated discharge of a firearm remain bases for a felony murder instruction as long as those crimes are not merely incidental to the murder itself.

2. 
Jury Instructions

Jon also argues he was improperly denied a second degree murder instruction as to the felony murder charges because (1) the trial court erred by failing to follow binding precedent, (2) refusal to give the requested instruction creates the possibility of inconsis­tent verdicts, (3) the plain language of the second degree murder statute requires that the instruction be given on these facts, and (4) denial of the requested instruction deprived him of a defense to the charge of first degree murder.  "Whether to issue a specific jury instruction is within the province of the trial court, and such a decision will not be reversed unless it is an abuse of discre­tion."  
Kidd
, 295 Ill. App. 3d at 167, 692 N.E.2d at 460
.  

Jon relies primarily on 
Kidd
 to argue that where felony murder is charged and the evidence shows the intent to kill or use  deadly force was formed 
after
 formation of a belief in the need for self-defense, a defendant is entitled to a second degree murder instruction.  In 
Kidd
, the defendant was convicted of aggravated battery and felony murder after the trial court denied his tendered instruction for second degree murder based on provocation.  Relying on the earlier decisions of the supreme court in 
Viser
, 62 Ill. 2d 568, 343 N.E.2d 903, and of this court in 
People v. Williams
, 164 Ill. App. 3d 99, 517 N.E.2d 745 (1987), 
Kidd
 held that "where provocation occurs prior to the time that a defendant forms a felonious intent or commits an aggravated battery, defendant is entitled to the [second degree] defense."  
Kidd
, 295 Ill. App. 3d at 165, 692 N.E.2d at 459.    

The State attempts to distinguish 
Kidd
 (and 
Williams
, upon which 
Kidd
 relied) by noting that both cases involved claims of second degree murder based on provocation (720 ILCS 5/9-2(a)(1) (West 1994)), not imperfect self-defense (720 ILCS 5/9-2(a)(2) (West 1994)).  The State offers no explanation for its reasoning that the holding of 
Kidd
 is limited to only one of the two mitigating defenses provided in the second degree murder statute, nor does it acknowledge our clear statement in 
Kidd
:

"If there is evidence that[,] if believed by the jury[,] would reduce a crime from first degree murder to second degree murder, defen

dant's requested second degree murder instruc

tion must be granted."  
Kidd
, 295 Ill. App. 3d at 167, 692 N.E.2d at 460.  

The State also argues that our decisions in 
Williams
 and 
Kidd
 are contrary to the holding in 
Thurman
, 223 Ill. App. 3d 196, 584 N.E.2d 1069, and, therefore, should not be followed here.  We note 
Thurman
 was decided by another appellate district and is not binding on this court.  
State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542 (1992).  In addition, 
Thurman
 not only predated 
Kidd
 by seven years, it addressed an entirely different issue.  The defendant in 
Thurman
 argued that a charge of felony murder cannot be based on aggravat­ed battery, "[b]ecause every murder involves an aggravat­ed battery *** and defendants would be precluded from proving mitigat­ing factors to reduce first degree murder to second degree murder."  
Thurman
, 223 Ill. App. 3d at 202, 584 N.E.2d at 1074.  The court rejected his argument that aggravated battery should always merge into murder as a lesser included offense.  
Thurman
, 223 Ill. App. 3d at 202, 584 N.E.2d at 1074.  
Thurman
 did not, however, consider the need for jury instructions on second degree murder in the circumstances presented here.

When a circuit court is "faced with conflicting decisions from the various appellate districts" and "the absence of control­

ling authority from its home district," 
it is "free to choose between the decisions of the other appellate districts."  
State Farm
, 152 Ill. 2d at 540, 605 N.E.2d at 542.  However, because of our system of precedent, the circuit court may not disregard binding authority from its home district.  
State Farm
, 152 Ill. 2d at 540, 605 N.E.2d at 542.  The trial court's disregard of the decision of this court in 
Kidd
, therefore, constitutes error, particularly when the trial court found the evidence sufficient to warrant giving a second degree murder instruction as to the other counts. 

3. 
Harmless Error Analysis

The State argues that, even if the trial court erred, the error was harmless because no reasonable juror could have found that Jon acted in an honest belief that Lila represented a threat.  The State confuses the standards for harmless instructional error and sufficiency of the evidence.  See 
People v. Dennis
, 181 Ill. 2d 87, 95, 692 N.E.2d 325, 330 (1998).  

The instructional error had the effect of preventing the jury from considering mitigating defenses to the charge of felony murder.  Had the jury been properly instructed, it would have been required to consider any evidence of provocation or imperfect self-

defense as to each of the three theories of murder charged.  As a result, the improper felony murder charges would not have affected the outcome of the trial, because the jury's analysis would have been the same whether it was proceeding under Type A, Type B, or both.  Thus, we concluded above that the verdict of second degree murder as to Keith must stand.  Reversal of the verdict of first degree murder as to Lila would not be necessary had the jury been properly instructed.

 However, the State prevailed at trial on the jury instruction issue, thus preventing the jury from engaging in the required analysis.  The State also presented general verdict forms, which obscure the basis for the jury's verdict, and repeatedly encouraged the jury to deal only with the felony murder counts and to disregard evidence of Jon's mental state.  As a result, because it is impossible to discern the basis for the verdict, the question before this court is whether reversible error results when a defendant is convicted of felony murder in the absence of evidence of an independent felonious purpose.   

We hold that it is reversible error for a trial court to deny a defendant's motion to dismiss a charge of felony murder where the State has failed to present evidence of an independent felonious purpose.  In this case, the prosecutor succeeded in diluting the intent requirement for knowing or intentional murder by charging felony murder and, as a result, Jon was denied a fair trial. 

III. CONCLUSION

For the foregoing reasons, the judgment of the trial court convicting Jon Morgan of the second degree murder of Keith Cearlock is affirmed.  His conviction for the first degree murder of Lila Cearlock is reversed and the cause remanded for a new trial.  The judgment of the circuit court of Logan County is affirmed in part and reversed in part.

Affirmed in part and reversed in part; cause remanded with directions.

McCULLOUGH, J., concurs.

STEIGMANN, J., specially concurs.

JUSTICE STEIGMANN, specially concurring: 

I agree completely with the majority opinion's analysis regarding the limits of the felony murder rule and why it should not apply in this case.  Another way to look at the key holding in this case--that the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself--is that the predicate felony must involve conduct other than that inherent in the killing itself.  I write this special concur

rence because the majority opinion has the effect of seriously calling into question the continuing validity of the 
Kidd
 decision of this court.  The basis for that statement follows.

Because the majority opinion initially appears inconsis

tent with the 1975 supreme court decision in 
Viser
, the majority distinguishes 
Viser
 on the facts.  Although the majority's effort has merit, it may prove unnecessary if the supreme court, upon further review, chooses to address the felony murder rule as the majority does rather than adhering to 
Viser
.  (See, 
e.g.
, 
People v. Roy
, 201 Ill. App. 3d 166, 185, 558 N.E.2d 1208, 1221 (1990), where this court declined to adhere to a long-­standing standard of review in sex offense cases--that the evidence had to show, in addition to the requirements in any other criminal case in which the sufficiency of evidence is challenged on appeal, that the complainant's testimony was either clear and convinc­ing or corroborated by other evidence--and implicitly concluded that the Supreme Court of Illinois, when it again considered the matter, would agree with the abandonment of that standard.  That implicit prediction was proved correct in 
People v. Schott
, 145 Ill. 2d 188, 202, 582 N.E.2d 690, 696-97 (1991).)  The justification for this conclusion is twofold:  (1) the majority opinion does not hold that 
no
 aggravated battery or aggravat­ed discharge of a firearm could ever serve as the predicate felony justifying the felony murder instruction; and (2) Illinois homicide law has undergone a fundamental change since the 
Viser
 decision was rendered, and this change places the supreme court's continued adherence to 
Viser
 in doubt.  

First, as the majority opinion makes clear, 
some
 aggra

vated batteries and aggravated discharges of a firearm will remain a basis for a felony murder instruction as long as those crimes are not "merely incidental to the murder"--that is, where those crimes involve conduct other than that inherent in the killing itself.  Examples where those crimes have served as a proper predicate for the felony murder rule exist in both 
Jenkins
 and 
Pugh
.

Second, Illinois homicide law underwent a fundamental change with the enactment in 1986 of Public Act 84-1450, which (1) changed the name of the offense of murder to first degree murder and (2) abolished­ the offense of voluntary manslaughter and substituted for it the offense of second degree murder.  As the supreme court wrote in 
People v. Jeffries
, 164 Ill. 2d 104, 111, 646 N.E.2d 587, 590 (1995), "[t]he intent of the legislature in enacting Public Act 84-1450 was to remedy the confusion and inconsistency that had developed in regard to the [previous] murder and voluntary man­

slaugh­ter statutes."  One of the means the legisla­ture used in doing so was to change the burden of proof in section 9-2, which previous­

ly defined voluntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9-2).  Under the old law, when the defendant in a murder case presented evidence of a factor in mitigation (either serious provocation or unreasonable belief) that must have been present to reduce an offense of murder to voluntary manslaughter, the State had the burden to prove, beyond a reasonable doubt, the absence of a factor in mitigation in order to obtain a murder conviction.  
Jeffries
, 164 Ill. 2d at 113-14, 646 N.E.2d at 591.  However, under the current section 9-2, now defining the crime of second degree murder, the defendant bears the burden to prove, by a preponder­ance of the evidence, one of the factors in mitigation that must be present to reduce an offense of first degree murder to second degree murder, although the State still bears the burden to prove, beyond a reasonable doubt, the elements of first degree murder.  720 ILCS 5/9-2 (West 1996).

This revision constituted a fundamental change in Illinois law, as shown by the supreme court's recognition of a hereto­fore unknown legal entity:  the lesser mitigated offense.  In 
Jeffries
, the court rejected the defendant's argument that second degree murder, like voluntary manslaughter, which it replaced, was a lesser 
included
 offense of first degree murder and instead concluded that "second degree murder is more accurately described as a 
lesser
 
mitigated
 
offense
 of first degree murder."  (Emphasis in original.)  
Jeffries
, 164 Ill. 2d at 122, 646 N.E.2d at 595.  The court explained that second degree murder is a lesser offense because its penalties upon conviction are lesser, and it is a mitigated offense because it is first degree murder 
plus
 defendant's proof by a preponderance of the evidence that a mitigating factor was present.  
Jeffries
, 164 Ill. 2d at 122, 646 N.E.2d at 595. 

The new section 9-2, defining second degree murder, also differed from its predecessor section 9-2, defining voluntary manslaughter, by providing that a person commits second degree murder "when he commits the offense of first degree murder as defined in paragraph[] (1) or (2) of subsection (a) of [s]ection 9-1 of this Code" and either mitigating factor is present.  720 ILCS 5/9-2(a) (West 1996).  Previously, section 9-2(a), defining voluntary manslaughter, simply stated that "[a] person who kills an individual without lawful justification commits voluntary manslaugh

ter" if, at the time of the killing, he acted under serious provocation or imperfect self-defense.  Ill. Rev. Stat. 1985, ch. 38, par. 9-2(a).  

The only reason for this change in the defining language appears to be to eliminate the charge of felony murder as being a basis upon which a jury could be instructed that it could return a second degree murder conviction as a lesser mitigated offense.  Yet, in 
Kidd
, this court held that, "[i]n order to give some meaning to the second degree murder statute, there must be some limit on a prosecutor's ability to charge felony murder," and concluded that the legislature could not have intended to prohibit a defendant--no matter what the facts--from obtaining a second degree murder instruction when the State has charged only felony murder.  
Kidd
, 295 Ill. App. 3d at 166, 692 N.E.2d at 459-60.  In so concluding, this court cited 
Viser
 and seemed to be particu­larly troubled by the idea, as the majority discussed, that aggravated battery could in almost any case under Illinois law serve as the predicate felony for a felony murder instruction, thus permitting "a prosecutor [to] avoid the provoca­tion defense in an intentional or knowing murder case by charging felony murder based upon an aggravated battery upon the person killed."  
Kidd
, 295 Ill. App. 3d at 165, 692 N.E.2d at 459.  

Although I wrote a special concurrence in 
Kidd
 disagreeing with the majority's analysis of section 9-2 (
Kidd
, 295 Ill. App. 3d at 168-71, 692 N.E.2d at 461-63 (Steigmann, J., specially concurring)), I understood the concerns that prompted the majority opinion there.  However, the majority's concerns in 
Kidd
, and the construc

tion of section 9-2 of the Criminal Code that the majority gave in 
Kidd
 to avoid the "absurd results" about which 
Kidd
 expressed concern, are both fully addressed and assuaged by the majority opinion in this case, restricting the predicate felony to conduct with a felonious purpose other than the killing itself--that is, the predicate felony must involve conduct other than that inherent in the killing itself. 

Thus, the judicial gloss given to section 9-2 of the Criminal Code by the majority opinion in 
Kidd
 may--and should--no longer be followed by the trial courts of Illinois.  

­